UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENEE WHITE,

    Plaintiff,

Case No. 11-14207

Hon. John Corbett O'Meara
v.                                         Mag. Judge Laurie J. Michelson

EMERGENCY MEDICINE BILLING
& CODING COMPANY,
SCHUMACHER GROUP OF LOUISIANA, INC., and
EMERGENCY GROUP OF ST. TAMMANY, LLC,

    Defendants.
_____/

### AMENDED OPINION AND ORDER GRANTING IN PART AND DENYING PART PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT [39]

As filed, Plaintiff Renee White's Complaint focuses on a threatening text message she received from one of Defendants' (now former) employees. White moves to broaden the scope of this case to add four other alleged wrongs. Two of them, however, are wrongs that allegedly harmed White's autistic daughter, Sharon Ricks. Despite being Ricks' legal guardian, White is proceeding pro se in this litigation, she is a not an attorney, and, therefore, she cannot add Ricks' claims to the Complaint. White's other two proposed claims, a negligent retention claim and a defamation claim, are her own. But the latter claim fails to state a claim for relief, and so adding it to the Complaint would be an act of futility. The negligent retention claim may also be inadequately pled, but White's factual assertions are such that Defendants' conclusory arguments do not convince the Court that White should be barred from pursuing that claim. Accordingly, and as detailed below, the Court GRANTS IN PART AND DENIES IN PART White's "Motion for Leave to File First Amended Complaint" (Dkt. 39).

I.

A.

As filed, White's Complaint alleges that, in August 2011, LaDonna Marston, an employee of either Defendant Emergency Medicine Billing & Coding Company or Defendant Emergency Group of St. Tammany, LLC, called and left her a message. (Compl. ¶ 13.) When White returned Marston's call, Marston asked, "Is this Sharon Ricks?" (*Id.* ¶ 16.) When White replied, "No, I am her mother and I received a message from you and am calling to inquire what this is in reference to"; Marston responded, "What's wrong she can't come to the phone and talk for herself?" (*Id.* ¶¶ 16-17.) To this, White explained, "Ma'am, [Ms. Ricks] has autism and I am her legal guardian." (*Id.* ¶ 17.) Marston remarked, "Well, I don't know her medical condition but she has an outstanding bill that needs to be paid." (*Id.* ¶ 18.) White concluded the conversation: "Just send me the bill and I'll take care of it when I get it, have a good day!" (*Id.* ¶ 19.) Marston immediately called White back and White reiterated, "send me the bill and I will take care of it." (*Id.* ¶ 22.) After White hung up for the second time, within a minute, Marston allegedly sent White the following text message: "Bitch will come to your fucking house and blow your to [sic] stupid ass up you dumb ad [sic] BITCH!!!!" (*Id.* ¶ 24.)

As it stands, White's Complaint contains two counts based on these allegations: a federal Fair Debt Collection Practices Act claim and an intentional infliction of emotional distress claim.

B.

Proceeding pro se after two attorneys have successively withdrawn, White now moves to add the following claims to her Complaint against Emergency Medicine Billing & Coding Company and Defendant The Schumacher Group of Louisiana, Inc. (Emergency Medicine's parent company): (1)

2

a negligent retention claim based on Defendants' alleged failure to exercise reasonable care in employing Marston; (2) a "Breach of Confidentiality" claim based on Defendants' alleged disclosure of some of Ricks' medical records; (3) a "Negligence of Record Documentation" claim for an allegedly defamatory remark Defendants wrote about Ricks; and (4) a claim by the same label for another allegedly defamatory remark, but about White. (*See* Pl.'s Mot. to Amend at 2-4, 9, 11 (ECF Pg ID 204-06, 211, 213)).

Defendants contend that these claims are "untimely, prejudicial, and legally futile." (Dkt. 44, Defs.' Resp. to Pl.'s Mot. to Amend at 1.)

## II.

Before addressing the merits of White's motion to amend, the Court must resolve a threshold issue. As just described, two of White's proposed claims assert wrongs done to her daughter, Ricks. Recognizing this, and perhaps drawing on the fact that White proceeds pro se, Defendants note that "it is not clear whether Plaintiff has legal standing to add another party as she seeks to do here." (Defs.' Resp. to Pl.'s Mot. Summ. J. at 3.)

But the answer is clear. Congress has recognized that a litigant such as White retains the right to act as her own counsel. 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel . . . ."); *see also Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause."). But the courts have said that § 1654 extends no further; in particular, "that statute does not permit plaintiffs to appear pro se where interests other than their own are at stake." *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002); *accord Berrios v. New York City Hous. Auth.*, 564 F.3d 130, 132

3

(2d Cir. 2009) ("Although § 1654 thus recognizes that an individual generally has the right to proceed pro se with respect to his own claims or claims against him personally, the statute does not permit unlicensed laymen to represent anyone else other than themselves." (internal quotation marks and alteration omitted)).

And Federal Rule of Civil Procedure 17 does not alter this rule when a pro se plaintiff acts as a representative of a minor or incompetent person. Because "[a] minor or incompetent person normally lacks the capacity to bring suit for [herself]," *Berrios*, 564 F.3d at 134, an incompetent's guardian "may sue or defend on behalf of . . . [the] incompetent person," Fed. R. Civ. P. 17(c)(1). But that right "does not alter the principle embodied in § 1654 that a non-attorney is not allowed to represent another individual in federal court litigation without the assistance of counsel. If the representative of the minor or incompetent person is not himself an attorney, he must be represented by an attorney in order to conduct the litigation." *Berrios*, 564 F.3d at 134; *see also Shepherd*, 313 F.3d at 970 ("[P]arents cannot appear pro se on behalf of their minor children because a minor's personal cause of action is her own and does not belong to her parent or representative.").

At least two related rationales justify requiring a party, "unless exercising [her] constitutional right to represent [herself]," *Berrios*, 564 F.3d at 133, to be represented by an attorney. First, the requirement acknowledges the fact that "the conduct of litigation by a non-attorney creates unusual burdens for his adversaries and the court, as well as for the party he would represent." *Berrios*, 564 F.3d at 133. Second, and to expand on that last point, "[i]t goes without saying that it is not in the interests of minors or incompetents that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected." *Cheung*, 906 F.2d at 61.

4

This Court exercises broad discretion in deciding whether to grant leave to amend, and, in this case, a significant factor informing that discretion is that it would not be in Ricks' best interest to allow White to now add her claims. If the Court granted White leave to add Ricks' claims, the prohibition on pro se representation of another would prevent White from prosecuting them. So the Court would stay Ricks' claims until White obtained an attorney to pursue them. *See e.g.*, *Zhu v. Countrywide Realty Co., Inc.*, No. 01-2067, 2001 WL 533200, at *2 (D. Kan. May 10, 2001) ("Plaintiff cannot represent her minor daughter since she is a pro se litigant. All proceedings as to [Plaintiff's daughter] are [therefore] stayed pending entry of appearance by qualified counsel on her behalf."); *Smith v. Detroit City Sch. Dist.*, No. 11-10502, 2011 WL 761504, at *2 (E.D. Mich. Feb. 25, 2011) (similar). The better course for Ricks, however, is for White to first obtain an attorney to represent Ricks' interests, and have that attorney, versed in pleading requirements, to file Ricks' claims. Under this second route, Ricks' claims would be better pled, and, because Ricks' counsel could immediately proceed to prosecute them (if added), there would be no additional delay to Ricks over the first option.

In short, to the extent that White seeks to add "Breach of Confidentiality" and "Negligence of Record Documentation" claims on behalf of her daughter, Sharon Ricks (*see* Pl.'s Mot. to Amend at 2-3), the Court denies White's motion. The Court now turns to the merits of White's motion to amend insofar as she seeks to add claims personal to her.

### III.

Given the timing of White's motion, the Federal Rules of Civil Procedure permit amendment "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2); *cf.* Fed. R. Civ. P. 15(a)(1). Defendants have opposed amendment, so White must seek leave. That path

5

is not meant to be unduly burdensome: Rule 15(a)(2) instructs that this Court "should freely give leave when justice so requires." Still, the determination of when "justice so requires" is "left to the sound discretion of the trial judge," *Robinson v. Michigan Consol. Gas Co. Inc.*, 918 F.2d 579, 591 (6th Cir. 1990), and a number of factors inform this Court's exercise of discretion: (1) the moving party's "[u]ndue delay in filing [its motion for leave]," (2) "lack of notice to the opposing party," (3) "bad faith by the moving party," (4) "repeated failure to cure deficiencies by previous amendments," (5) "undue prejudice to the opposing party," and (6) "futility of amendment." *Robinson*, 918 F.2d at 591. "Delay by itself," however, "is not sufficient reason to deny a motion to amend," and "[n]otice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Id.*

## IV.

Because it is a potentially dispositive inquiry, the Court first determines whether White's proposed claims are futile because they fail to state a claim upon which relief may be granted. *See Lipa v. Asset Acceptance, LLC*, 572 F. Supp. 2d 841, 853 (E.D. Mich. 2008) ("[I]f the district court concludes that 'the pleading as amended could not withstand a motion to dismiss,' the court may deny the motion to amend, thereby saving the parties and the court the expense of having to confront a claim doomed to failure from the onset." (quoting *Head v. Jellico Housing Authority*, 870 F.2d 1117, 1123 (6th Cir. 1989))). In particular, the Court considers, in turn, whether it would be futile to permit White to add her negligent retention and "Negligence of Record Documentation" claims to the Complaint. The Court then examines other factors that inform the leave-to-amend inquiry.

**A.**

**1.**

In asserting that White's proposed negligent retention claim is inadequately pled, Defendants challenge White's choice of law. White, pointing out that "Texas [is] where Defendants' business practice is located and where this matter originated," applies Texas law. (Pl.'s Mot. to Amend at 3.) Defendants, without citation to authority or any choice-of-law analysis, respond, "Plaintiff's reference to and reliance on Texas law is entirely misplaced. Plaintiff cannot as a matter of law proceed under Texas law." (Defs.' Resp. to Pl.'s Mot. to Amend at 5.) Defendants then proceed under Michigan law. (*Id.*)

The Court does not now need to resolve the parties' undeveloped choice-of-law dispute. Defendants have the burden of establishing futility. *See Clay v. Dist. of Columbia*, No. 09-1612, 2010 WL 3894591, at *4 (D.D.C. Sept. 30, 2010) ("It is the defendants . . . that bear the burden of persuading the Court that the plaintiffs' amendment would prove futile."); *Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 582 (E.D.N.Y. 2011) ("Here, Defendants allege that Plaintiff's amendment would be futile, and thus bear the burden of demonstrating that Plaintiff's amendments will be futile in order to properly justify this Court's denial of Plaintiff's request for leave to amend."); *Smith v. Chrysler Corp.*, 938 F. Supp. 1406, 1412 (S.D. Ind. 1996) ("Defendants have the burden of showing that the amendment is sought in bad faith, that it is futile, or that it would cause substantial prejudice, undue delay or injustice."). And, assuming in Defendants' favor that Michigan law applies, Defendants have not carried their burden.

**2.**

Defendants argue that White's negligent retention allegations fail to state a claim upon which relief may be granted because "under Michigan law, an employer cannot be held liable for intentional torts committed by an employee outside the scope of his employment." (Defs.' Resp. to Pl.'s Mot. to Amend at 6 (citing *Hersh v. Kentfield Builders, Inc.*, 385 Mich. 410, 414 (1971).) In particular, Defendants explain:

> As to this critical element, Plaintiff cannot sustain her claim because the call at issue was not made in the scope of Ms. Marston's employment and/or in furtherance of Defendants' business. Indeed, by Plaintiff's own admission, the phone call for which she now complains was made on Ms. Marston's "personal cell phone" in direct contravention of company policy resulting in her immediate termination. Such actions cannot be imputed to an employer, nor can they form the basis for liability. [*Hersh*, 385 Mich. at 414; *Bean v. Directions Unlimited, Inc.*, 609 N.W.2d 567, 571 (Mich. 2000).] For this reason, Plaintiff's negligent retention claim will be subject to dismissal under Fed. R. Civ. Proc. 12(b)(6).

(Defs.' Resp. to Pl.'s Mot. to Amend at 7.)

Defendants' argument blurs the distinction between direct and vicarious liability, and, for that reason, fails to establish that White's claims are futile. Under a vicarious liability theory (*respondeat superior*), an employer is not liable for the acts of its employee when the employee is acting outside the scope of her employment. *Hersh*, 189 N.W.2d at 289; *Bean*, 609 N.W.2d at 571. But the negligent retention theory White alleges is a claim that Defendants, as employers, are liable for their own negligent act of retaining an employee that should have been dismissed. This is a direct liability claim. *See Cox ex rel. Cox v. Bd. of Hosp. Managers for City of Flint*, 651 N.W.2d 356, 361 (Mich. 2002) ("A hospital may be 1) directly liable for malpractice, through claims of negligence in supervision of staff physicians as well as selection and retention of medical staff, or 2) vicariously

8

liable for the negligence of its agents."); *In re Estate of Miles*, No. 270033, 2007 WL 914743, at *4 (Mich. Ct. App. Mar. 27, 2007) ("An institutional defendant may be held either (1) directly liable through claims of negligent supervision, selection, and retention of staff, or (2) vicariously liable for the alleged negligence of its agents and employees.").

Because of this fundamental misunderstanding, Defendants' reliance on *Hersh* and *Bean* is misplaced. The portion of *Bean* cited by Defendants is merely a quote from the lower court's opinion in that case regarding the law on a *vicarious* claim: "'Under the doctrine of respondeat superior, defendant would not be liable for torts intentionally committed by [its employee] if they were beyond the scope of his master's business.'" *Bean*, 609 N.W.2d at 571 (quoting *Bean v. Directions Unlimited, Inc.*, No. 205482, 1998 WL 1988808, at *2 (Mich. Ct. App. Nov. 20, 1998)). Notably, the court in *Bean*, unlike Defendants here, recognized the difference between vicarious and direct liability claims. *Id.* at 570 ("In her complaint, [Plaintiff] alleged negligent hiring and supervision of Mr. Flagle. She also alleged that Mr. Flagle had committed assault, battery, and criminal sexual conduct for which [Defendant] Directions Unlimited was responsible under the principle of respondeat superior.").

As for *Hersh*, Defendants apparently rely on this statement: "Now, in this case, an employer is not liable for intentional or reckless acts committed by an employee beyond the scope of his employer's business." *Hersh*, 189 N.W.2d at 289. But context is critical: that quote was from the lower court's jury instruction that continued as follows:

> The act of Bennie Hutchinson, of which the plaintiff complains in this action, was clearly beyond the scope of his employment, so the mere fact of the employment does not impose liability on the defendant. The defendant employer is not an insurer (sic) or guarantor of the safety of others, such as the plaintiff.

9

> However, the law does impose upon employers the duty of using reasonable care in the hiring of employees, and if you find that the defendant was negligent in the hiring of Bennie Hutchinson, on the day in question, then you should find for the plaintiffs, provided you find that such damages inflicted on the plaintiff were the proximate result of that negligence.

189 N.W.2d at 289. In other words, the *Hersh* court implied that negligent hiring was *not* barred by the scope-of-employment rule Defendants now invoke. Indeed, the Michigan Supreme Court, although perhaps imprecisely using the term "exception," recently reiterated this point:

> In general, an employer is not responsible for an intentional tort in the workplace committed by its employee acting outside the scope of employment. *Martin v. Jones*, 302 Mich. 355, 358, 4 N.W.2d 686 (1942). However, this Court has previously recognized an exception to this general rule of liability when the employer "'knew or should have known of his employee's propensities and criminal record before commission of an intentional tort by [that] employee . . . .'" *Hersh v. Kentfield Builders, Inc.*, 385 Mich. 410, 412, 189 N.W.2d 286 (1971) (citation omitted).

*McClements v. Ford Motor Co.*, 702 N.W.2d 166, 170, *opinion corrected on reh'g*, 704 N.W.2d 68 (Mich. 2005).

Accordingly, Defendants have not shown that White's negligent retention claim is futile.

And, although the Court harbors doubt as to whether White's negligent retention claim could survive a well-developed Rule 12(b)(6) or Rule 56 motion, nothing strikes the Court as so obviously deficient about White's negligent-retention allegations that it would be an abuse of discretion to permit them. Under Michigan law, "[a]n employer who knew or should have known of his employee's propensities and criminal record before commission of an intentional tort by employee upon customer who came to employer's place of business would be liable for damages to such customer." *Hersh*, 189 N.W.2d at 288 (internal quotation marks omitted); *see also Doe v. Borromeo*, No. 305162, 2012 WL 4215032, at *5 (Mich. Ct. App. Sept. 20, 2012) (explaining that the duty

standard for a negligent supervision claim "mirrors the one Michigan courts have long relied upon in the closely related context of negligent retention" and that, under that standard, the duty inquiry turns on whether the employer "knew or should have known of [the employee's] propensity, if any, to commit criminal or tortious acts"). Here, White's motion to amend asserts that "a number of complaints" had been filed against Marston "for unprofessional demeanor with other customers," and that witnesses have observed "her behavioral activity as that which is conducive to a temper tantrum." (Pl.'s Mot. to Amend at 2-3.) White further asserts that prior to the call that spurred this suit, "Defendants invoked a Disciplinary Action against LaDonna Marston on June 24, 2011 to reflect a final written warning," and that the Disciplinary Action stated, "'On June 24, 2011 your behavior worsened to the point you were removed from the floor by a member of the [Emergency Medicine Billing & Coding Company] management team witnessing your behavior.'" (*Id.* at 3.) Although White admits that Defendants used measures to curb Marston's conduct, she asserts that this fact favors her position: "LaDonna Marston had been counseled regarding her inappropriate behavior(s), received documented warning and removed from her job duties on one occasion, nonetheless, Defendants[] permitted . . . Marston to return to her original duties prior to imputing principles to develop efforts aimed at goal[] directed behavior(s)." (*Id.* at 4.) Given that Defendants have made no argument that these allegations fail to allege a negligent retention claim (and that the choice-of-law issue is unsettled), the Court declines to reach that conclusion at this time.[1]

---

[1] Although Defendants have not cited it, to forestall the argument in a future motion, the Court notes that it has doubts about the validity of a seemingly dispositive statement in *Travis v. ADT Sec. Servs., Inc.*, 884 F. Supp. 2d 629 (E.D. Mich. 2012). There, the court stated, "Courts in this district have held that Michigan law requires an allegation of physical injury to support a claim of negligent hiring/retention." *Id.* at 637. White of course has not alleged physical injury resulting form Defendants allegedly negligent retention of Marston. *Travis* therefore appears fatal to Plaintiff's claim.

But *Travis* dealt with "economic injury": the plaintiff sought to recover damages for goods

11

## C.

Defendants assert that White's "Negligence of Record Documentation" cause of action does not exist. (Defs.' Resp. to Pl.'s Mot. to Amend at 6.) Based on the label, this is probably true. But pro se complaints are to be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and White has made clear enough that she intended to plead the tort of defamation. In particular, White claims that on one of Ricks' medical records, the following appeared: "PT'S RUDE MOTHER SHE STARTED YELLING AND CURSING IN MY EAR SC: DISCONECTED [*sic*] THE CALL . . . ." (Pl.'s Mot. to Amend at 11.) White explicitly refers to this statement as "libelous" and asserts that the "tort of defamation applies." (*Id.* at 11-12.)

---

stolen by an allegedly negligently retained employee. And although *Travis* relied on another case from this District, *Vennittilli v. Primerica, Inc.*, there the court merely stated: "While Michigan courts have recognized a cause of action for negligent hiring where an employee commits a foreseeable act of physical violence; *see Bradley v. Stevens*, 329 Mich. 556, 46 N.W.2d 382 (1951); Michigan has not extended the concept to include what is alleged in these cases. Accordingly, this court declines to extend negligent hiring to include economic injuries." 943 F. Supp. 793, 797 (E.D. Mich. 1996). Thus, *Vennittilli* also did not preclude all negligent hiring claims based on non-physical injury.

    *Travis* also relied on *Stacy v. H & R Block Tax Servs., Inc.*, No. 07-13327, 2011 WL 3566384 (E.D. Mich. Aug. 12, 2011), but that decision was appealed and, on appeal, the Sixth Circuit reasoned:

> [W]e note that two of the cases on which HRB has relied for the proposition that negligent hiring and supervision claims are limited to those where physical acts and injuries are involved pre-date [*Bell v. Mich. Council 25 of Am. Fed'n of State, Cnty., and Mun. Emps.*, No. 246684, 2005 WL 356306 (Mich. Ct. App. Feb. 15, 2005)], *see Bean v. Directions Unlimited, Inc.*, 462 Mich. 24, 609 N.W.2d 567 (2000); *Vennittilli v. Primerica, Inc.*, 943 F. Supp. 793 (E.D. Mich. 1996), and that neither *Bean* nor a third case relied on, and the only one that post-dates *Bell*, *Dudley v. Thomas*, No. 08-14017, 2009 WL 1620413 (E.D.Mich. June 9, 2009), expressly relegate negligent hiring/supervision claims to those involving a physical act and injury. Accordingly we are not persuaded that the Michigan courts would foreclose relief to Plaintiffs because of the economic and emotional, rather than physical, nature of the damages alleged.

*Stacy v. HRB Tax Grp., Inc.*, 516 F. App'x 588 (6th Cir. 2013).

12

Having identified the cause of action White seeks to add, one additional issue must be resolved prior to determining whether White's allegations state a claim for defamation: which law sets forth the elements that White must plead?

Whether by diversity or supplemental jurisdiction, in deciding matters of state law, this Court applies the law of the forum state, here Michigan, *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999); this includes Michigan's choice-of-law rules, *Diamond Computer Sys., Inc. v. SBC Commc'ns, Inc.*, 424 F. Supp. 2d 970, 979 (E.D. Mich. 2006) (citing *Menuskin v. Williams*, 145 F.3d 755, 761 (6th Cir. 1998)). For tort claims, such as defamation, Michigan courts presume that the law of the forum governs. *Ramakrishna v. Besser Co.*, 172 F. Supp. 2d 926, 932 (E.D. Mich. 2001); *see also Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274, 286 (1997). This presumption, however, must yield if (1) another state "'has an interest in having its law applied'" and (2) "'Michigan's interests [do not] mandate that Michigan law be applied, despite the foreign interests.'" *Diamond Computer Sys., Inc.*, 424 F. Supp. 2d at 980. In other words, "Michigan courts . . . use another state's law where the other state has a significant interest and Michigan has only a minimal interest in the matter." *Hall v. General Motors Corp.*, 229 Mich. App. 580, 585 (Mich. Ct. App. 1998).

The three states that potentially have an interest in applying their law are Texas (where Emergency Medicine Billing & Coding Company is incorporated), Louisiana (where all three Defendants operate), and Michigan (where White and Ricks are located). Texas, however, does not have a significant interest in this case: White's allegations do not implicate corporate structure or governance, and, other than being the state of Emergency Medicine Billing & Coding Company's incorporation, there is no other tie between Texas and the events giving rise to this case. As for

Louisiana and Michigan, the two states' laws on defamation, for purposes of resolving this motion, are sufficiently in accord. *Cf. Williams v. Toys "R" Us*, 138 F. App'x 798, 803 (6th Cir. 2005) ("Because there is no conflict of laws (indeed this is a false conflict situation), we therefore conclude that the district court did not err in applying Michigan state law in this case.").

Michigan and Louisiana classify defamatory statements almost identically. "Michigan law has traditionally defined a defamatory communication as one which tends so to harm the reputation of [persons so] as to lower [them] in the estimation of the community or to deter [others] from associating or dealing with [them]." *Locricchio v. Evening News Ass'n*, 476 N.W.2d 112, 126 (1991) (internal quotation marks omitted). And in Louisiana: "A defamatory communication is one which tends to harm a person's reputation so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Guilbeaux v. Times of Acadiana, Inc.*, 661 So. 2d 1027, 1031 (La. Ct. App. Aug. 9, 1995); *see also 210 Baronne St. Ltd. P'ship v. First Nat. Bank of Commerce*, 543 So. 2d 502, 504 (La. Ct. App. 1989) ("Defamatory words are those which tend to expose a person to contempt, hatred, ridicule or obloquy, or which cause a person to be shunned or avoided, or which have a tendency to deprive him of the benefits of public confidence or injure him in his occupation."). Further, under both Michigan and Louisiana law, it is the role of the court to determine whether an alleged statement is defamatory. *Kevorkian v. Am. Med. Ass'n*, 602 N.W.2d 233, 238 (Mich. Ct. App. 1999) ("A court may determine, as a matter of law, whether a statement is actually capable of defamatory meaning."); *Guilbeaux v. Times of Acadiana, Inc.*, 661 So. 2d at 1031 ("The question of whether a communication is capable of a particular meaning and whether that meaning is defamatory is one for the court.").

Here, the characterization of White as a "rude mother" is not, as a matter of law, defamatory.

14

Instead, it is merely a non-actionable statement of opinion. *See Fisher v. Detroit Free Press, Inc.*, 404 N.W.2d 765, 767 (1987) ("[A] statement of opinion is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."); *St. Germain v. Coulon*, 887 So. 2d 608, 612 (La. Ct. App. Oct. 26, 2004) ("An action in defamation does not lie from a statement of opinion based on the speaker's subjective view, which does not expressly state or imply the existence of underlying facts, because falsity is an element of any defamation claim and a purely subjective statement can be neither true nor false."). Indeed, Michigan and Louisiana courts have found similar subjective statements to be non-actionable. *See Ireland v. Edwards*, 584 N.W.2d 632, 637 (Mich. Ct. App. 1998) ("The question whether someone is a 'fit mother,' like the question whether someone is abysmally ignorant, is necessarily subjective. Thus, defendant's statements regarding plaintiff's fitness as a mother are not actionable."); *Harder v. Sunrise Senior Living, Inc.*, No. 2:09-CV-11094, 2009 WL 5171843, at *5 (E.D. Mich. Dec. 22, 2009) (applying Michigan law and reasoning, "in the present case[,] the statement that someone displayed 'poor judgment' is necessarily subjective. Whether someone displays good judgment or poor judgment is not susceptible to being provable as false and therefore cannot form the basis for a defamation action."); *St. Germain*, 887 So. 2d at 612 ("Other alleged statements, such as St. Germain being 'trash,' 'trouble,' and a 'thorn in their side,' are obviously statements of opinion based on the speaker's subjective view, which do not expressly state or imply the existence of underlying facts."); *Roy v. Coco*, 649 So. 2d 1139, 1141 (La. Ct. App. Feb. 1, 1995) (affirming trial court's finding that the following statements were of opinion and, therefore, not defamatory: plaintiff was "not qualified to run a bank," "hired incompetent people," and had "poor leadership and management ability"); *Autry v. Woodall*, 493 So. 2d 716, 718 (La. Ct. App. 1986) (finding that home owners' association's letter

15

to homeowners asserting that one of the community members had filed lawsuits against the association and thereby "continued in his efforts to cause trouble" and engaged in conduct that "appear[ed] to be vindictive" were non-actionable statements of opinion).

True, "[the patient's mother] started yelling and cursing in my ear," may be a non-opinion statement that is capable of being proven false. But it is implausible that such a statement is capable of lowering White's reputation in the estimation of the community or deterring others from associating with White. *See Locricchio*, 476 N.W.2d at 126; *Guilbeaux*, 661 So. 2d at 1031. This is especially so given the context inherent in the statement: Marston, or another of Defendants' employees, was recording the result of an attempt to collect a debt. Community members, even if they were to assume the allegation was true, can appreciate that debt collection is an experience capable of eliciting an angry response. *Cf. Kevorkian v. Am. Med. Ass'n*, 602 N.W.2d 233, 237 (Mich. Ct. App. 1999) ("The [Michigan] Supreme Court has further recognized that statements must be viewed in context to determine whether they are capable of defamatory interpretation, or whether they constitute no more than 'rhetorical hyperbole' or 'vigorous epithet.'").

### D.

The prohibition on pro se representation of another, therefore, along with the foregoing futility analysis, leaves only White's negligent retention claim as a candidate for supplementing the Complaint. The question thus becomes whether Defendants' remaining arguments persuade the Court to deny White leave to add this one claim. The answer is "no."

Defendants say that it is unclear whether White's proposed claims "are directed at some or all of the defendants." (Defs.' Resp. to Pl.'s Mot. to Amend at 4.) But the second sentence of White's motion explicitly states, "[d]uring discovery, Plaintiff . . . discovered substantial evidence

16

supporting additional claims against Defendants[] Emergency Medicine Billing & Coding Company, a Texas Corporation, and Schumacher Group of Louisiana, Inc., a limited liability company, joint and severally such that defense and justice requires amendment." (Pl.'s Mot. to Amend at 1.)

Defendants also balk at White's suggestion that her motion is timely filed because claims were uncovered during discovery:

> While Plaintiff conveniently suggests that her newest claims were unearthed during discovery in this matter, Plaintiff has had possession of the cited (and improperly characterized) discovery materials for more than 120 days and, thus, there is no good reason for Plaintiff's delayed application for leave to amend.

(Defs.' Resp. to Pl.'s Mot. to Amend at 4.) Accepting this explanation as fact, delay alone does not warrant denying White's motion. Rather, "a district court must find 'at least some significant showing of prejudice to the opponent' . . . 'delay alone, regardless of its length is not enough to bar [an amendment] if the other party is not prejudiced.'" *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 560, 562 (6th Cir. 1986)); *see also Roberts v. City of Flint*, No. 06-13789, 2007 U.S. Dist. LEXIS 71256, at *3 (E.D. Mich. Sept. 26, 2007).

Regarding prejudice, Defendants assert:

> Plaintiff's proposed amendment of the pleadings at this stage in the proceeding will require extensive, new discovery notwithstanding the fact that discovery has already been extended and is scheduled to close on April 30, 2013. Dispositive motions are currently due six weeks later – on May 30, 2013 – and have been researched and framed for argument based on the complaint that has been pending since September 2011. Indeed, all of the pleadings and corresponding discovery have been directed at the parties and claims of record.

(Defs.' Resp. to Pl.'s Mot. to Amend at 4 (citing *Bleiler v. Cristwood Contracting Co.*, 868 F. Supp. 461, 463 (D. Conn. 1994)).)

17

These circumstances, however, have changed. Less than two weeks ago, Defendants, recounting difficulties with taking White's deposition, filed an ex parte motion to convert the then upcoming August 13, 2013 pre-trial conference to a status conference. (Dkt. 45.) District Judge John Corbett O'Meara granted Defendants' motion, held a status conference, and then informed this Court that the parties have agreed to extend the existing scheduling order. This includes moving the discovery deadline to January 31, 2014. Under this new schedule, Defendants have not demonstrated any significant prejudice in engaging in additional discovery relevant to White's claim that Defendants' negligently retained Marston.

**V.**

For the foregoing reasons, the Court GRANTS IN PART White's "Motion for Leave to File First Amended Complaint" (Dkt. 39). White is granted leave to amend her Complaint to add a negligent retention claim for Defendants Emergency Medicine Billing & Coding Company's and/or Schumacher Group of Louisiana, Inc.'s alleged failure to adequately train or discipline Marston prior to her August 2011 call to White. White's motion is otherwise DENIED. Within 7 days of service of this opinion and order, White shall file an amended complaint that includes the allegations set forth in the original Complaint supplemented with the allegations supporting her negligent retention claim.

**IT IS SO ORDERED.**

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of

fourteen days from the date of receipt of a copy of this order to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

                                      s/Laurie J. Michelson
                                      LAURIE J. MICHELSON
                                      UNITED STATES MAGISTRATE JUDGE

Dated: August 28, 2013

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 28, 2013.

                                      s/Jane Johnson
                                      Deputy Clerk